### GRIZZARD, et ux v. HESS OIL COMPANY.
No. 2457.

Circuit Court, Lake County.

March 26, 1970.

Ronston E. Davis of Davis, McLin, Burnsed & Austin, Leesburg, for plaintiffs.

Andrew Pattillo of Pattillo, MacKay & McKeever, Ocala, for defendant.

W. TROY HALL, Jr., Circuit Judge.

*Final judgment and opinion:* This cause was tried without a jury on November 12, 1969. After the trial the court requested the attorneys for the parties to submit memorandum briefs in support of their positions. The court has received and read the briefs submitted, and after due consideration enters final judgment. The court finds the following to be the facts controlling in this case —

The plaintiffs, Beverly Grizzard and Dora Lee Grizzard, are the owners of a parcel of real property located in Lake County. On December 16, 1957, they leased the property to Florida Service Corporation for a term expiring March 1, 1968. The lease agreement provided, *inter alia,* that —

Lessors do hereby grant unto Lessee the option of extending this lease for an additional five year period, commencing the first day of March, A. D., 1968, and ending the last day of February, A. D., 1973, at and for monthly rental sum of TWO HUNDRED FIFTY DOLLARS ($250.00) payable monthly in advance during the said extension. Lessee may exercise this option to extend by giving notice in writing of that election to exercise same to Lessors at least thirty (30) days prior to March 1, 1968 . . .

Florida Service Corporation subsequently assigned its rights under the lease to the defendant, Hess Oil Company.

On November 27, 1967, the defendant mailed a letter (dated November 22, 1967) to the plaintiffs referring to the lease agreement between them and stating "This is to advise that we will not renew our lease on this location." The letter was received by the plaintiffs on November 30, 1967.

It appears from the evidence presented that the plaintiffs relied upon that letter; and on December 6, 1967 the plaintiffs amended an application for a loan at the First Federal Savings and Loan Association of Lake County, which application had been previously submitted on October 12, 1967. The amendment changed the loan application in the following ways — A. The amount of the loan was reduced from $50,000 to $45,000. B. The real estate to be used as security for the loan was changed in that 200 feet of highway frontage, owned by Beverly Grizzard Properties, was substituted for 6 acres of real estate owned by Flora-Lee Inc. C. Flora-Lee Inc. became a borrower along with the plaintiffs on the amended application. D. Time for repayment of the $45,000 loan was increased from 180 months to 240 months. E. The monthly payments were reduced from $449.43 per month to $348.90 per month.

In reliance on the above mentioned correspondence, Tommy N. Grizzard, son of the plaintiffs and their business manager, was instructed by the plaintiffs and based upon those instructions, he contacted the Bank of Tavares, in person, on December 6, 1967 and advised the bank that the plaintiffs wished to increase their open-end mortgage, secured by the property on which the Hess Oil gas station was located, from $3,500 to $12,000.

The First Federal Savings and Loan Association of Lake County approved the plaintiffs' and Flora-Lee Inc.'s loan application as amended, on December 7, 1967.

On December 7, 1967, Hess Oil Company mailed a second letter to the plaintiffs wherein they advised the plaintiffs that their earlier letter of November 22, 1967 was sent in error and that they *wished* to extend the lease. (No proof was submitted to show mistake or error.) In this letter the defendant requested that the plaintiffs sign and return a copy of this letter *indicating their agreement to the extension.* This letter was received by the plaintiffs on December 11, 1967. It appears, from the evidence submitted, that the second letter was an offer or request made by the defendant to the plaintiffs, which offer was never accepted, and, in fact, was rejected, in writing.

On December 12, 1967 the plaintiffs closed the loan at the Bank of Tavares, thereby borrowing an additional sum of $9,000 secured by the property on which the Hess Oil gas station was located.

On December 15, 1967 the amended loan application between Flora-Lee Inc. and the plaintiffs was closed at First Federal Savings and Loan Association of Lake County, wherein the sum of $45,000 was borrowed, secured by part of the property owned by Flora-Lee Inc. and 200 feet of highway frontage owned by the plaintiffs.

On December 24, 1967 one of the plaintiffs, Beverly Grizzard, wrote a letter to Hess Oil Company in reply to its second letter (received by plaintiffs on December 11, 1967) and informed it that, because of adjustments made in their business decisions they would not agree to the extension of the lease.

In the latter part of February, 1968, Beverly Grizzard, one of the plaintiffs, was contacted by a representative of Hess Oil Company, who made an offer to purchase the subject real property for the sum of $40,000. This offer to purchase by the defendant was rejected by the plaintiffs.

On March 1, 1968 a letter was written to Hess Oil Company by the plaintiffs' attorney advising it that it was holding over beyond the term of its written lease.

On April 11, 1968 plaintiff filed a complaint herein requesting a declaratory decree as to what rights, if any, the defendant had pursuant to the terms of the written lease. Further, the plaintiffs asked this court to award a reasonable amount for rent to be paid by the defendant to plaintiffs for the period after the termination of the original term.

Defendant chose to defend this suit on two issues, only. The first issue was "whether or not the written lease was terminated", and secondly, "if the written lease was terminated, what rent is owed to plaintiffs for holding over."

No Florida case has been found that has decided the questions now before the court. Therefore, based upon the able assistance of opposing counsel (in filing comprehensive briefs on the points of law involved) and based upon the facts and inferences therefrom (presented to the court at the trial of this case), it becomes the duty of this court to render a written opinion for the future guidance of the bar and public on these questions.

Whether or not the written lease in question was terminated depends upon the answer to the following question —

*"May a tenant waive its option to renew a written lease by giving written notice to the landlord (prior to the expiration of the time for exercising the option to renew) that it will not renew the lease?"*

There being no Florida law on this particular point, it is necessary for the court to look to general contract law and to the law in other jurisdictions in order to answer this question.

Corbin on Contracts, §94, states —

> No cases have been found deciding whether a rejection by the holder of a binding and irrevocable option operates as a termination of his power. *It is believed, however, that it should have no such effect.* The holder of such an option has a right as well as a power, created by contract and not by a mere offer. *The holder of a contract right does not terminate it and discharge the duty of the other party by merely saying that he discharges it or by expressing an intention not to enforce. Such a statement followed by a material change of position by the other party will operate as a discharge by estoppel. Similarly, a notice of rejection by an option holder, followed by a material change of position, should terminate both his contract right and his power of acceptance.* (Italics added.)

51C C.J.S., *Landlord and Tenant*, §63 (citing cases from other jurisdictions) states (in part) —

> *There may be a waiver of the right to exercise an option to renew a lease. The lessee by his conduct may estop himself to claim the right to a further lease,* and the landlord may, on equitable principles, be relieved from his obligation to renew where the tenant has been guilty of a fraudulent course of conduct. Where the lessee voluntarily surrenders the premises, he may not insist on a right to renew. (Italics added.)

51C C.J.S., *Landlord and Tenant*, §64, states (in part) —

> When an election is made, and timely notice is given or request made for a renewal or extension under the provisions of the lease, the rights and obligations of the parties become mutually fixed and the lessee is entitled to retain possession of the property for the additional period, and the lessor may hold him liable for the rent therefor. *On the other hand, if the lessee elects not to avail himself of the option to extend or renew, he is bound thereby and may not afterward demand an extension or renewal, especially where the lessor has acted on such election and has made expenditures and incurred expenses relying on the election.* Under some leases the election to exercise or not to exercise the option may effect a reduction or increase of rent, that is, the parties may reduce or increase the rent by making it one amount if the option is exercised, and a different amount if the option is not exercised. (Italics added.)

From reading the above authorities, the court concludes that the answer to the first question is —

> *Yes, a tenant may waive its option to renew a written lease by giving written notice to the landlord that it will not renew the lease; provided, however, the landlord acts on such notice (election) and has made expenditures in reliance on such notice (election).*

In the case before the court, the evidence shows that the plaintiffs did change their position in reliance upon said notice; and a reasonable inference from the evidence submitted shows that the defendant considered its "election not to exercise its option" binding, by later requesting the plaintiffs to agree to an extension of the lease. Further, uncontradicted evidence shows that the defendant considered the lease terminated, when defendant (after the request for extension was denied by plaintiffs) made an offer to the plaintiffs to purchase the property in question.

The defendant had no duty, under the terms of the lease, to give plaintiffs any notice of its intention not to renew. Once it chose to give such notice, and the plaintiffs changed their position in reliance on such notice, the defendant waived its right to exercise its option to renew, and is now estopped to claim *any* rights under said lease.

The question as to the amount of rent due the plaintiffs from the defendant for the use of the property by the defendant from the time the written lease expired to the date the defendant quits and gives up possession of said premises, is also one of first impression in Florida; although there is some statutory and case law touching on the question.

The specific question before the court is —

> *"What is the basis for determining the amount of rent due the landlord from a tenant at will if such tenancy arises due to a holdover after the expiration of a written lease but with written permission?"*

The landlord (plaintiffs) claims the tenant (defendant) is a tenant at will and owes a reasonable rental for the use of the property subsequent to the expiration of the written lease, and the tenant (defendant) claims it is a tenant under the terms of the written lease, or, in any event, the amount of rent it owes is the rental reserved by and provided for in paragraph 13 of the written lease.

The court, having determined that the option to renew was not exercised, and that the lease terminated, must, necessarily, find that the lease does not control the rental to be paid for holding over.

Then what rent is due for use of the property during the holdover period?

A "tenancy at will" is either based upon an *oral lease* of lands and tenements or upon a *written lease with an unlimited tenancy.* F. S. §§83.01 and 83.02. The reason the legislature saw fit to define a "tenancy at will" was to establish a *fixed term and a length of notice* required to be given prior to exercising the right of termination on the part of all parties — as a matter of law. A "tenancy at will" cannot arise if such is based upon a written lease, with a limited term specified.

A lease of real property for a period longer than one year must be in writing (F. S. §§689.01 and 725.01); and signed in the presence of two subscribing witnesses by the lessor (if a natural person) or his agent (F. S. §689.01; Gill v. Livingston, 158 Fla. 577, 29 So.2d 631; Reed v. Moore, 91 Fla. 900, 109 So. 86; 51 C.J.S., *Landlord and Tenant*, §218).

"Tenancy at sufferance" is defined in F. S. §83.04 —

> When any tenancy created by an instrument in writing, the term of which is limited, has expired and the tenant holds over in the possession of said premises without renewing the lease by some further instrument in writing, then such holding over shall be construed to be a tenancy at sufferance. The mere payment or acceptance of rent shall not be construed to be a renewal of the term, *but if the holding over be continued with the written consent of the lessor then the tenancy shall become a tenancy at will under the provisions of this law.* (Italics added.)

It will be noted from reading the above definition, however, that the legislature has stated that one who holds over (after any tenancy created by an instrument in writing — written lease — the term of which is limited, has expired) with the written consent of the lessor, *then* the tenancy is not a "tenancy at sufferance" but is a "tenancy at will."

Under the terms set out in the letter written to the defendant by the plaintiffs' attorney and agent, it appears to the court, and the court so holds, that the defendant held over as a tenant at will, which by law gave either party the right to terminate upon giving the appropriate notice required by chapter 83, F. S. 1967.

F.S. §83.07 authorizes an action to recover "reasonable damages" for the use and occupation of property by another person with the owner's permission, when such property is not held, occupied by or

under agreement (lease) or demise by deed. The statute is quite clear in allowing reasonable damages (rental) in that the last sentence reads — ". . . ; and if on trial of any action, any demise or agreement (not being by deed) whereby a certain rent was reserved is given in evidence, the plaintiff shall not be dismissed but may make use thereof as an evidence of the *quantum of damages* to be recovered." (Italics added.)

The parties are free to contract for what specific sum is to be paid is rent for the use and occupancy of real estate; however, if a clear and unequivocal amount is not agreed upon, the court has no alternative but to allow a *reasonable rent*. All parties agree that no specific sum was agreed upon.

Plaintiffs offered testimony as to what a reasonable rental value would be. Defendant moved to have such testimony stricken. The court reserved its ruling on said motion to strike, and at the end of the trial requested briefs from counsel on all points and issues brought before the court.

Defendant chose not to argue its motion to strike in its brief, but relied upon its argument that the court should not award any rental other than that stated in the expired lease (the amount that would have been payable if the lease had been renewed).

It isn't easy, even after a careful analysis of the many statutes and common law, to readily distinguish "tenancy at will" and "tenancy at sufferance". This tendency to confuse the tenancies should be dispelled.

"Holding over" is the key to the real problem before the court. According to the statutes of Florida, if one holds over after the expiration of a written (fixed term) lease without renewing the written lease by use of some further instrument in writing (both parties signing or the one with option, properly exercising its option), then such is a tenancy at sufferance or a tenancy at will, depending upon whether oral (implied) or written consent was given to "hold over". See F.S. §83.04.

This court has determined that the option to renew in the written lease, in favor of defendant, was waived by the defendant, and that the lease terminated at the expiration of its fixed term. It would be unreasonable for the court to impose on either party the terms contained in an agreement that has expired and no longer represents the intent of the parties.

In the case now before the court, if the court was required to allow the rental value as stated in the option provision of the expired lease, the court would be exercising the option for the

defendant, even though the defendant, as a matter of law and equity, could not exercise the option on its own. This court will not allow the time necessary for the processes and procedures of legal and equitable action to give the defendant a windfall; neither will this court so interpret a contract that one party will be given an unfair or unreasonable advantage over the other. See James v. Gulf Life Ins. Co., 66 So.2d 62 (Supreme Court of Florida), and White Star Realty Co. v. Schreiber, Fla. 229 So.2d 300. The rent to be paid under order of this court must and shall be a reasonable one, based upon the evidence submitted to this court.

The answer to the question of "what is the basis for determining the rent in this case" is —

> *The basis for determining the amount of rent due the landlord from a tenant at will if such tenancy arises due to a holdover after the expiration of a written lease but with written permission is a reasonable rental as proved by evidence submitted to the court.*

The only evidence submitted to the court to prove what a reasonable rental would be in this case was objected to by defendant, and the court reserved ruling on that objection. It is the opinion of this court that defendant's motion to strike that testimony should be denied.

Based upon the evidence submitted in this case and the law controlling the use of said evidence, the court finds that a reasonable rental in an amount equal to $708.33 per month (from the date of the expiration of the written lease to the date possession of the premises are surrendered) is owed by the defendant to the plaintiffs.

Therefore, it is ordered and adjudged that —

Defendant, Hess Oil Company, has no rights under the terms of that certain written lease entered into on December 16, 1957 and subsequently assigned by the original lessee to the defendant.

Defendant, Hess Oil Company, owes to plaintiffs, Beverly Grizzard and Dora Lee Grizzard, the sum of $17,000 as reasonable rent from March 1, 1968 through February 28, 1970, and $23.32 per day for each day held thereafter, for which sums let execution issue, forthwith.

Plaintiffs are entitled to possession of the subject real property located in Leesburg, Lake County, Florida, described as — [legal description omitted] and it is ordered that this judgment shall serve as a "writ of assistance" in favor of plaintiffs, if defendant fails to vacate said premises on or before June 1, 1970.